**SECURITY MUTUAL CASUALTY COM-PANY et al., Appellee,**

v.

**AFFILIATED FM INSURANCE COM-PANY, Appellant.**

No. 71-1308.

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 11, 1972.

Decided Dec. 29, 1972.

Rehearing and Rehearing En Banc Denied Jan. 19, 1973.

Lawrence Zelle, Robins, Davis & Lyons, Minneapolis, Minn., for appellant.

O. C. Adamson, II, Minneapolis, Minn., for appellee.

Before MATTHES, Chief Judge, BRIGHT, Circuit Judge, and WEBSTER,* District Judge.

WEBSTER, District Judge.

This is an appeal from a declaratory judgment in favor of Security Mutual Casualty Company, et al. (Security), plaintiffs below, exonerating Security from any liability to appellant Affiliated FM Insurance Company (Affiliated) on account of a certain contract of reinsurance between the parties in respect to a $6,988,000 fire loss in Newark, New Jersey on December 31, 1967. The factual issues were submitted to a jury upon special findings, pursuant to Fed.R.Civ. P. 49(a). Based upon findings of the jury that defendant had made misstatements or concealments of material matters, all of which increased the risk of loss, the trial judge entered judgment declaring Security not liable to Affiliated on the contract and ruling against Affiliated on its counterclaim to recover amounts claimed by it to have been due under the contract. Thereafter, appellant filed its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial, which the trial judge denied in an unpublished order entered March 31, 1971. From this judgment and order Affiliated appeals.

In the Spring of 1967, Hillside Metal Products, Inc. approached Philadelphia Manufacturers Mutual Insurance Company to obtain insurance on the building complex which it occupied in Newark, New Jersey. Philadelphia is an affiliate of Factory Mutuals System and insures "standard FM" risks, which are highly protected or are near perfect or very low hazard risks. In June, 1967, Philadelphia agreed to insure and circulated among the Factory Mutuals System members an invitation to accept part of the risk. Several members declined because of the previous high loss experience of Hillside. In July, an inspector for Philadelphia discovered that a tenant in buildings 10 and 11 was engaged in leather working and thus was using flammable liquids which would result in making these buildings "non-standard". Philadelphia notified Hillside that it intended to cancel the policy as to buildings 10, 11 and 15. Philadelphia then asked its subsidiary

* Sitting by designation.

company, appellant Affiliated, to issue a $1,250,000 policy directly to Hillside. Affiliated bound the contract and then attempted to secure reinsurance. Affiliated requested current information from Philadelphia, and on July 26 was informed about the flammable liquid hazard. On July 30, Affiliated had received further information that Hillside had sustained three large losses. Affiliated approached a number of other companies for reinsurance, but they declined. About this time, Philadelphia decided that the best solution was to ask Affiliated to insure buildings 2, 2B and 3, in addition to buildings 10, 11, and 15. At the same time, it was decided that Philadelphia would keep its previously issued $21,500,000 policies in effect and that Affiliated would reinsure Philadelphia for $5,500,000 with respect to these buildings. Philadelphia apparently intended to limit its liability under the $21,500,000 policies to $5,500,000 in respect to these buildings, but somehow failed to do so.

On August 25, 1967, Affiliated issued a certificate of reinsurance to Philadelphia for the $5,500,000. By utilizing its treaty reinsurers, Affiliated was able to re-reinsure $3,000,000 of the $5,500,000 risk. It then turned to facultative reinsurers (not bound to insure), to whom it owed a duty to use the utmost good faith in its communications, and with whom Affiliated had a policy to disclose all pertinent information.

One such group was the Security Mutual pool, of which Security Casualty Company was a member. E. W. Blanch Company of Minneapolis acted as agent for the pool in accepting risks. Ralph Palmieri, an employee of Affiliated, called E. W. Blanch Company and read, over the telephone, a prepared data sheet on the coverage. In so doing, he mentioned only one prior loss of $21,000. He did not mention the flammable liquid hazard caused by the leather working tenant. He did not inform the agent that the business interruption insurance

was a valued policy[1] providing for payment of $35,000 per diem. He did not mention other declinations. Blanch agreed to place $500,000 of reinsurance.

On December 8, Philadelphia informed Affiliated that Hillside had suffered losses of $3,600,000 in 1963; $2,000,000 in 1965; $400,000 in 1966. This information was not given Blanch prior to the loss.

After the fire on December 31, 1967, Hillside refused to limit Philadelphia's liability to $5,500,000. Philadelphia paid Hillside $1,450,000 for property damage and $5,538,000 for business interruption, a total of $6,988,000. It then collected $5,500,000 from Affiliated, leaving Philadelphia with a net loss of $1,488,000.

The several issues were submitted to a jury on special findings. The jury found that Affiliated had misrepresented to Security Hillside's loss record; that it had misrepresented the occupancy of Hillside's buildings and had failed to disclose that the business interruption clause of the reinsurance on Hillside was being written as valued business interruption insurance; that each of these representations were material matters; that each of these representations was made with intent to deceive and defraud; and that each of these representations increased the risk of loss.

There was a secondary issue over whether, assuming Security's liability, it should pay its fractional part of the intended exposure or its fractional part of the total loss paid by Affiliated. In a separate special finding the jury apportioned the loss on the issue of pro rata sharing of insurance $152,240 to Security and $347,760 to Affiliated.

### Issues Presented

The court incorporated these findings in a declaratory judgment in favor of Security, holding it without liability as a reinsurer (and thereby mooting the secondary issue of apportionment). In

---

1. A fixed or agreed upon amount per day, rather than computed upon actual loss.

this appeal appellant Affiliated contends that the district court prejudicially misstated and misapplied the law of Minnesota in its instructions to the jury; that the court erred in denying defendant's motion for a directed verdict; and that the court erred in not submitting the defense of waiver and in submitting the apportionment finding to the jury without appropriate instructions.

## I

### The Instructions

Appellant contends that the court's instructions erroneously stated the law of Minnesota applicable to misrepresentations by parties seeking insurance (in this case, reinsurance). The main thrust of the attack is upon the court's refusal to instruct the jury that bad faith—or absence of good faith—must be shown in order to establish that a statement made or omitted was a "misrepresentation" within the meaning of Section 60A.08, Subd. 9, Minnesota Statutes Annotated, which provides:

"No oral or written misrepresentation made by the assured, or in his behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or unless the matter misrepresented increases the risk of loss."

Expressed another way, appellant contends that bad faith must be proved regardless of whether the party asserting the defense of misrepresentation claims it was made with intent to deceive or that it increased the risk of loss. We disagree.

In his charge, Judge Larson read Section 60A.08, supra, to the jury, repeated it, and then instructed them as follows:

"This means, as the statute indicates, that a material misrepresenta-

tion, made with intent to deceive and defraud, avoids the policy of insurance or reinsurance. A material misrepresentation not made with intent to deceive and defraud does not avoid the policy unless by the misrepresentation the risk of loss is increased. If a material misrepresentation increases the risk of loss, the policy is avoided regardless of the intent with which it was made.

"The term intent as used in the phrase 'intent to deceive and defraud' means a deliberate falsification or withholding of information material to the risk with an actual design or purpose to deceive and defraud.

"The phrase 'increases the risk of loss' means that there must be a greater likelihood of liability being imposed on the insurer (here the plaintiff reinsurance companies) than would have been the case if the facts were as the insured (here the defendant Affiliated) stated them to be."

Judge Larson then instructed the jury that a person is liable for misrepresentation "if he makes a false representation of a past or existing material fact susceptible of knowledge, knowing it to be false, or as of his own knowledge without knowing whether it is true or false, with intention to induce the person to whom it is made to act in reliance upon it, or under such circumstances that such person is justified in acting in reliance upon it, and such person is thereby deceived and induced to act in reliance upon it, to his pecuniary damage." After discussing factors to be considered, Judge Larson charged the jury that intentional concealment can have the same effect as a misrepresentation,[2] but that there is normally no liability for mere non-disclosure unless there is a duty to speak.

The trial court fully and accurately instructed the jury on the meaning and

2. In Romain v. Twin City Fire Ins. Co., 193 Minn. 1, 258 N.W. 289 (1934), the court said (p. 290):

"Though the statute is couched in such terms as to include only active mis-

representations, we perceive that it was intended to and does include passive misrepresentations, that is, concealment of known facts."

elements of misrepresentation of a material matter within the meaning of M. S.A. § 60A.08.[3] The court correctly instructed the jury that under the statute "a material misrepresentation not made with intent to deceive and defraud does not avoid the policy unless by the misrepresentation the risk of loss is increased." [4] The court correctly instructed on the meaning of "intent to deceive and defraud" and "increase the risk of loss."

Appellant contends that any misrepresentation in an insurance case, to be actionable, must be attended by bad faith —that is, that the statements were false and *known to be false* by the insured, see Northwestern Mutual Life Insurance Company v. Wiggins, 15 F.2d 646, 647 (9th Cir. 1926); or that there was an intentional concealment to create a defense, see General Reinsurance Corporation v. Southern Surety Company of Des Moines, Iowa, 27 F.2d 265 (8th Cir. 1928).

■ This contention is not without weight if it be applied only to the first alternative clause of the controlling statute—*intent to deceive*. It cannot, contrary to appellant's view, be made to apply to the second alternative—*increased risk of loss*. In an unbroken line of cases,[5] the Supreme Court of Minnesota has construed its statute exactly as the instruction given by Judge Larson:

"If a material misrepresentation increases the risk of loss, the policy is avoided, regardless of the intent with which it is made."

In Johnson v. National Life Ins. Co., 123 Minn. 453, 144 N.W. 218 (1913), the Supreme Court of Minnesota traced the history of the statute saying:

"Our statutes, and statutes like them, were intended to put warranties upon substantially the basis of representations, and to do away with defenses, made by incorporating conditions and terms in policies, making them by agreement material representations or warranties, and controlling on the right of recovery. As we construe the statute a material misrepresentation, made with intent to deceive and defraud, avoids the policy * * * If a material misrepresentation increases the risk of loss, the policy is avoided, regardless of the intent with which it was made * * *

"Several of the states have statutes of like purpose, and some are couched in language substantially identical. The cases construing such statutes uniformly hold that the last 'or' in section 1623 is used in the alternative. We bow to the authority of the cases and adopt their construction * * *

"Whether a misrepresentation is material, and whether the misrepresentation increases the risk of loss, and whether a misrepresentation is made with intent to deceive and defraud, are questions usually for the jury, with the burden of proof upon the insured." 144 N.W. 219–220.

■ While Judge Larson's instructions, taken as a whole, correctly charged the jury on the issue of material misrepresentations which increased the risk of loss, we think that the district court's instruction on proof of intent to deceive erroneously permitted the jury to find that material misrepresen-

---

3. Swanson v. Domning, 251 Minn. 110, 114, 86 N.W.2d 716, 720; Griffin v. Farrier, 32 Minn. 474, 21 N.W. 553–554 (1884); Rien v. Cooper, 211 Minn. 517, 523, 1 N.W.2d 847, 851 (1942); Lehman v. Hansord Pontiac Co., 246 Minn. 1, 9, 74 N.W.2d 305, 311 (1955); Hanson v. Ford Motor Company, 278 F.2d 586 (8th Cir. 1960).

4. Johnson v. National Life Ins. Co., 123 Minn. 453, 144 N.W. 218, 219 (1913).

5. Johnson v. National Life Ins. Co., supra; Iblings v. Phoenix Mutual Life Ins. Co. of Hartford, Conn., 172 Minn. 341, 215 N.W. 429 (1927); Laury v. Northwestern Mut. Life Ins. Co., 180 Minn. 205, 230 N.W. 648, 231 N.W. 824 (1930); Nielsen v. Mutual Service Casualty Insurance Company, 243 Minn. 246, 67 N.W. 2d 457 (1954).

tations were made with intent to deceive without requiring proof of bad faith. That portion of the charge to which we except is as follows:

"There are circumstances in which an intent to deceive is presumed and does not have to be shown. This is true when the representations which induced the plaintiff to act were in fact false, though made in good faith, were material, were not mere opinion, and were of a character to justify reliance thereon by the other party. The good faith of the defendant is immaterial if the statement is made as an affirmation of which the defendant has knowledge and is in fact untrue. The right of recovery in a case of this kind is based on the fact that such statement is untrue in fact, was relied upon by the other party in acting, and has resulted in loss to him which he should not be required to bear."

In setting forth the classic elements or factors of actionable misrepresentation under Minnesota Law,[6] the trial judge quoted from the classic enumeration of Judge (now Justice) Blackmun in Hanson v. Ford Motor Company, 278 F.2d 586 (8th Cir. 1960). This was an action in fraud brought by a purchaser of an automobile agency against the manufacturer for misrepresenting the profits of other agencies in order to induce the plaintiff to invest in the agency. Judge Blackmun observed in his opinion

that under the law of Minnesota it is no longer necessary to prove intent to deceive where a misrepresentation was made "as of one's own knowledge."

Judge Blackmun's reference was to the general law of fraudulent misrepresentation. Section 60A.08 M.S.A. imposes by statute two additional alternative requirements in insurance cases: The misrepresentation will not avoid the liability (1) "unless made with intent to deceive and defraud" or (2) "unless the matter misrepresented increases the risk of loss." Johnson v. National Life Ins. Co., supra.

We are not prepared to accept respondent's argument that transactions between insurance companies should be subject to the less stringent test set forth in Hanson v. Ford Motor Company, supra. We find no case under the controlling statute which makes such distinction. Having correctly defined "intent to deceive"[7] and having correctly instructed the jury on fraudulent intent,[8] the above quoted portion of the charge distorted and nullified the former instructions and should not have been given.

Since, however, the issues of "intent to deceive and defraud" and "increased risk of loss" were separately submitted to the jury and separately determined on special findings, pursuant to Fed.R.Civ. P. 49(a), the error in the charge as to good faith cannot be said to have preju-

6. "1. There must be a representation;
2. That representation must be false;
3. It must have to do with a past or present fact;
4. That fact must be material;
5. It must be susceptible of knowledge;
6. The representer must know it to be false, or in the alternative, must assert it as of his own knowledge without knowing whether it is true or false;
7. The representer must intend to have the other person induced to act, or justified in acting upon it;
8. That person must be so induced to act or so justified in acting;
9. That person's action must be in reliance upon the representation;

10. That person must suffer damage;
11. That damage must be attributable to the misrepresentation, that is, the statement must be the proximate cause of the injury."

7. "a deliberate falsification or withholding of information material to the risk with an actual design or purpose to deceive and defraud."

8. "Fraudulent intent may be proved by showing that the defendant knew its statements to be false, or that having no knowledge of their truth or falsity, it did not believe them to be true; or that having no knowledge of their truth or falsity, it yet represented them to be true of its own knowledge."

diced the jury in arriving at its finding on the separate issue of whether the material misrepresentations increased the risk of loss; for if the jury so found, the policy would be avoided "regardless of the intent with which it was made." *Johnson v. National Life Ins. Co.,* supra.[9]

## II

### *Motion for Directed Verdict*

Affiliated contends that the trial court erred in denying its motion for a directed verdict at the close of the evidence.

We think it appropriate at this point to discuss the scope of our review, considering the somewhat unusual manner in which this case proceeded to judgment.

A jury was apparently requested by plaintiff Security without objection by defendant Affiliated. Since the action was instituted by the reinsurer after the fire loss, it was not treated as a suit for recision, but instead the issue of liability was submitted for a declaratory determination under 28 U.S.C. § 2201. See Fed.R.Civ.P. 57. Based upon the special findings of the jury, the trial judge entered his order and judgment declaring that Security was not liable to Affiliated under the contract of reinsurance on account of the Hillside loss. The trial judge stated, in his Order overruling Affiliated's motion for new trial, that had the case been tendered as an action for recision, using the jury in an advisory capacity, he would have reached the same result.

■■ If the jury findings had been considered advisory only, as in equity

actions, then the "clearly erroneous" test would have been the appropriate test to be applied to the court's findings. Fed. R.Civ.P. 52(a). *Chicago & Northwestern Ry. v. Minnesota Transfer Ry. Co.,* 371 F.2d 129 (8th Cir. 1967). If the case was tried to the jury as a matter of right, the test to be applied is the sufficiency of the evidence to submit the case to a jury, defendant having moved for a directed verdict at the close of the evidence and for judgment n. o. v. as authorized by Fed.R.Civ.P. 50(b). *Tsai v. Rosenthal,* 297 F.2d 614, 618 (8th Cir. 1961); *Harnik v. Lilley,* 167 F.2d 159, 160 (8th Cir. 1948). The same test is applied where a jury trial was not a matter of right but was granted with the consent of the parties. Fed.R.Civ.P. 39(c). *Kelly v. Shamrock Oil & Gas Corp.,* 171 F.2d 909, 911 (5th Cir. 1948), cert. denied 337 U.S. 917, 69 S.Ct. 1159, 93 L.Ed. 1727 (1949). We conclude that the sufficiency of the evidence test should be applied in this case.

■ *Material Misrepresentation.* Any defense of misrepresentation must be based upon the information supplied by Palmieri to E. W. Blanch Company or withheld from it on or about August 26, 1967 when Palmieri solicited the reinsurance from the Security Mutual pool. (1) It is undisputed that on July 26, 1967 Affiliated had knowledge that a tenant in buildings 10 and 11 was engaged in leather working and was using flammable liquids. This knowledge was not communicated by Palmieri to Blanch, although it was contained in the data sheet which Palmieri was using Instead, Palmieri stated that the occupancy of the buildings was the assembly and painting of steel office furnishings. (2) Palmieri disclosed only one fire loss of $21,000 in 1958.[10] (3) Palmieri did

9. Wise use of Fed.R.Civ.P. 49(a) avoided the necessity for retrial. Cf. *Mixon v. Atlantic Coast Line Railroad Company,* 370 F.2d 852 at 860–862 (5th Cir. 1966) (Brown, J. specially concurring); see Hon. John R. Brown, "Federal Special Verdicts: The Doubt Eliminator," 44 F.R.D. 338.

10. Palmieri's notes at the time of his call to Blanch, copied from other company records, included two declinations due to "loss record." One notation indicated "TPFC requested off; were involved in two losses. B.I. [business interruption] loss potential high, and complex machinery".

not tell Blanch that the particular policy was a valued business interruption policy of $35,000 per day.

Philadelphia was aware of the substantial fire losses of Hillside in 1963, 1965 and 1966. On June 30, 1967 Affiliated received information that Hillside had sustained "three large losses." This information was reinforced by the declinations prior to Palmieri's call to Blanch. Affiliated learned the details of these losses December 8, 1967, but at no time communicated this information to Security, to whom as a faculative reinsurer it owed the utmost good faith. Appleman, Insurance Law and Practice § 7687. General Reinsurance Corporation v. Southern Security of Des Moines, Iowa, supra, 27 F.2d 265 at 271. We conclude that there was substantial evidence from which the jury could find that appellant had obtained the reinsurance from respondent by means of misrepresentations and that such misrepresentations were material.

■ *Intent to Defraud.* We further conclude that there was sufficient evidence to submit the issue of whether such misrepresentations were made with intent to deceive and defraud, although, for reasons previously set forth we believe the instructions on this issue were too misleading to permit a verdict to stand on this ground.

■ *Increased Risk of Loss.* We therefore must determine whether the separate special finding that the material misrepresentations increased the risk of loss was supported by substantial evidence. We hold that it was. Mr. Edgar W. Blanch, Sr. qualified as an expert and testified that in his opinion (1) the existence of a frequency of losses, particularly of large amounts, would cause him to initially consider that there was a high risk possibility in connection with the operation; (2) the mere presence of the undisclosed occupant with an entirely different and more volatile fire

experience possibility increased the possibility of loss; and (3) on a generalized basis the risk of loss under a valued business interruption policy is greater than for actual loss exposure, and his company had a fixed policy against writing such insurance.

John T. Evan, insurance executive and lecturer on insurance subjects, testified that properly written valued business interruption insurance increased the risk of loss because it was written at the peak of the insured's earnings, thereby increasing the risk during any slump period. He also testified that failure to disclose the leather working operation in this case increased the risk of loss because it introduced into the total risk new causative hazards that could cause either explosion or fires. While the weight of such testimony was for the jury, there was certainly sufficient evidence presented to submit the case to the jury by means of special findings pursuant to Fed.R.Civ.P. 49(a), and the trial court correctly denied the motion for a directed verdict.

### III

#### *Other Contentions*

■ *Waiver.* Appellant's remaining contentions may be dealt with summarily. There was no relevant evidence which would warrant submitting the defense of waiver to the jury. Following the fire loss, Blanch requested and obtained from members of the pool checks in the amount of their pro rata share of $500,000. As *Judge Larson* observed in his Order, the checks were never delivered to appellant and after the facts had been developed upon investigation, appellant did nothing further by way of payment. Waiver is a voluntary relinquishment of a known right. Meagher v. Kavli, 251 Minn. 477, 88 N.W.2d 871 (1958). In American Eagle Fire Insurance Co. v. Eagle Star Ins. Co., 216 F.2d 176 (9th Cir. 1954), the court held a reinsurer was not estopped from denying liability for salvage of cargo where

it subsequently paid the insurer for cargo lost and executed final binders, and accepted premiums, where a breach of pilotage warranty had freed the insurer from any liability for the value of the cargo lost. The routine preliminary activity of Security does not even begin to reach the proportions of the conduct of the exonerated reinsurer in *American Eagle Fire Ins. Co.*, supra. The district court properly refused to submit the defense of waiver to the jury.

*Excluded Portion of Exhibit.* The district court excluded from evidence a provision of the agreement between Blanch and the Security Pool which dealt with clerical errors in processing reinsurance business. It supplies no defense to a misrepresentation by appellant of a material matter which increased the risk, and the district court properly sustained Security's motion to strike that provision of the agreement as irrelevant.

*Apportionment.* In the special findings, the district court asked the jury how $500,000 of the loss should be apportioned between Affiliated and Security. The jury found Security's share to be $152,240 and Affiliated's share to be $347,760. Security and Affiliated hotly disputed at trial the manner in which, assuming liability, Security's proportionate share of the loss should be computed. While it would have been better to instruct the jury on the factual contentions of the parties before asking the jury to make the apportionments, there was no prejudicial error because (1) the jury had found the facts against Affiliated on the issues of actionable misrepresentation, and (2) the jury was instructed to make this apportionment "[r]egardless of your answers to the previous questions * * *" We need not inquire into the factual basis for the apportionment because the district court correctly ruled, based on the jury's other findings, that Security was not liable on the policy.

Affirmed.