**TCF MORTGAGE CORPORATION, Plaintiff,**

v.

**VEREX ASSURANCE, INC., Defendant.**

**No. 3–88 CIV 868.**

United States District Court,
D. Minnesota,
Third Division.

Feb. 13, 1989.

James T. Swenson, Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiff.

Richard T. Thomson, Lapp, Laurie, Libra, Abramson & Thomson, Chartered, Minneapolis, Minn., for defendant.

### ORDER

DEVITT, District Judge.

### BACKGROUND

Plaintiff TCF Mortgage Corporation ("TCF") and the Gregory P. Smiths (not parties to this suit) entered into a mortgage loan agreement in 1984 for the purchase of a new house in Brooklyn Center, Minnesota. Defendant Verex Assurance, Inc. ("Verex") provided mortgage loan guarantee insurance for this loan.

Eventually the Smiths defaulted and the loan was foreclosed. In June, 1987, TCF presented a claim to Verex. Verex denied the claim and attempted to rescind the policy, contending that the insurance application submitted by TCF had misrepresented the Smiths' financial condition when it failed to disclose $116,000 of the Smiths' indebtedness.

TCF brought this action for breach of contract, seeking $15,839.99 in damages, which represents the amount of money Verex would have had to pay TCF if the policy had not been rescinded. TCF claims that rescission was wrongful because the misrepresentations in question were made by the Smiths and TCF had no knowledge of them. TCF also claims that the misrepresentations in question were not in the "Application" but only in documents accompanying it and, therefore, are not grounds for rescission. TCF now moves for summary judgment.

Verex does not claim that TCF knew of the Smiths' misrepresentations or acted in bad faith. Rather, it claims a "lender is not required to have actual knowledge of omissions and misrepresentations in the origination documents to permit the mortgage insurer to rescind coverage where the risk represented in such documents is materially different from the risk associated with insuring the subject loan." Letter from Verex to TCF dated 12/27/87, Plaintiff's Exhibit 2. In its responsive memorandum, defendant also raises the defenses of mutual mistake, fraud, negligent misrepresentation, and breach of fiduciary duty.

Oral argument was heard on February 13, 1987.

### DISCUSSION

Minn.Stat. Section 60A.08, Subd. 9, provides:

> No oral or written misrepresentation made by the assured, or in the assured's behalf, in the negotiation of insurance, shall be deemed material, or defeat or avoid the policy, or prevent its attaching, unless made with intent to deceive and defraud, or *unless the matter misrepresented increases the risk of loss.*

(emphasis added). Under this statute and applicable case law, if a material misrepresentation increases the risk of loss, the policy may be avoided regardless of the intent with which it was made. *See, e.g., Security Mutual Cas. Co. v. Affiliated FM Ins. Co.,* 471 F.2d 238, 243 (8th Cir.1972); *Transamerican Ins. v. Austin Farm Center,* 354 N.W.2d 503 (Minn.App.1984);

*Waseca Mutual Ins. Co. v. Noska,* 331 N.W.2d 917 (Minn.1983).

In this case, it is clear that the misrepresentations in question were material and increased the risk of loss. The Smiths' undisclosed liabilities added at least $1,500 to the Smiths' monthly payments, more than doubling the amount of the Smiths' monthly payments disclosed to Verex. This obviously increased the risk of default. Indeed, Verex's internal regulations would not have permitted it to insure the loan if the true facts had been known. Harlow affidavit par. 16. Also, TCF would not likely have made the loan if the true facts had been known. Holm affidavit par. 27, 28.

The only question remaining then is whether the misrepresentation in question was "made by the assured, or in the assured's behalf." Minn.Stat. Sec. 60A.08, subd. 9. The answer to this question is yes. Cases have allowed the avoidance of mortgage guarantee insurance for misrepresentations made by the borrower, unbeknownst to the insured bank, when the contract concerned explicitly made representations of the borrower representations of the insured. *See, e.g., United Guar. Res. Ins. v. American Pioneer Sav. Bank,* 655 F.Supp. 165 (S.D.Fla.1987); *Mountain Sec. Sav. v. United Guar. Residential Co.,* 678 F.Supp. 610 (W.D.Va.1987); *see also* unpublished decisions submitted by defendant *In re Epic Mortgage Insurance Litigation,* 701 F.Supp. 1192 (E.D.Va.1988); *Insurance Commissioner of the State of California v. TMIC Ins. Co.,* 207 Cal. App.3d 981, 255 Cal.Rptr. 175 (Cal.App. 1989). Such a contractual clarification is not, however, necessary.

In this case, although the misrepresentations were contained only in the Smiths' loan application and credit history report, these documents were submitted by TCF with the "Application" form in order to get the insurance. Moreover, Verex required that these documents be submitted before coverage could be issued.

The parties make a lot out of whether these documents were part of the "Application" as defined in the Master Policy. The Master Policy states that coverage is issued "in reliance upon the statements contained in the Application submitted by the Insured ..." The Master Policy defines "Application" as being provided to Verex "on forms furnished and with requirements prescribed by [Verex]." Verex's requirements are listed in an Operations Manual which was provided to TCF in 1982. The manual states that certain documentation is to be submitted with the application, including a copy of the lender's loan application and a credit report.

TCF argues that this documentation cannot be considered part of the application. It seems to base its argument largely upon the fact that in 1985 Verex issued a new Master Policy, which explicitly made the documentation an item relied upon by Verex. However, this subsequent contract is only marginally relevant to the meaning of the prior contract. Moreover, TCF's argument, were its premises accepted, would not show that Verex did not in fact rely on the documents submitted by TCF. It would only show that there was no contractual presumption of reliance.

Here, the facts show that Verex relied upon the information contained in these documents. And because TCF submitted these documents (as required by Verex) in order to receive the insurance, the misrepresentations were "made by the assured" or at least "in the assured's behalf." Minn.Stat. Sec. 60A.08, subd. 9. Furthermore, because "the matter misrepresented increase[d] the risk of loss" the policy is avoidable "regardless of the intent with which it was made." *Id.* and *Security Mutual Cas. Co. v. Affiliated FM Ins. Co.,* 471 F.2d 238, 243 (8th Cir.1972).

Alternatively, Verex's defense of mutual mistake would likely be successful. It appears that the Smiths' financial condition was a basic assumption of both parties and that neither TCF nor Verex would have entered into this contract had the true facts been known.

Consequently, summary judgment for plaintiff is not appropriate as it does not appear that plaintiff is entitled to judgment as a matter of law.

It should be noted that TCF could have protected itself against borrower fraud or misrepresentation by obtaining fidelity insurance or a fraud bond. Verex, however, is not licensed to provide such insurance. Furthermore, it appears that it is understood in the insurance industry that mortgage guarantee insurance does not insure the lender against the risk that the borrower obtained the mortgage loan by fraud or misrepresentation. *See In re EPIC Mortgage Insurance Litigation*, 701 F.Supp. at 1237–1239 (E.D.Va.1988).

## CONCLUSION

IT IS HEREBY ORDERED That plaintiff's motion for summary judgment is DENIED.