James D. DOWNING, Plaintiff–
Appellee,

v.

The BOARD OF TRUSTEES OF THE UNIVERSITY OF ALABAMA, University of Alabama at Birmingham, Daniel M. Strunk, in his individual capacity, Defendants–Appellants,

United States of America, Intervenor.

No. 00–10481.

United States Court of Appeals,
Eleventh Circuit.

Feb. 13, 2003.

Lisa Huggins, Office of Counsel, The Univ. of Alabama System, Birmingham, AL, for Defendants–Appellants.

Samuel Fisher, Gordon, Silberman, Wiggins & Childs, Joel Scott Isenberg, Smith & Ely, L.L.P., Birmingham, AL, David T. Goldberg, NAACP Legal Defense Fund, New York City, for Plaintiff–Appellee.

Before TJOFLAT and BIRCH, Circuit Judges, and VINING*, District Judge.

TJOFLAT, Circuit Judge:

## I.

In this case, James D. Downing, a former employee in the campus police department of the University of Alabama at Birmingham seeks equitable relief and damages against the University's Board of Trustees ("the Board") under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e–2(a)(1) and 2000e–3(a)[1], as

---

\* Honorable Robert L. Vining, Jr., United States District Judge for the Northern District of Georgia, sitting by designation.

1. Section 2000e–2(a)(1) states in relevant part:

 It shall be an unlawful employment practice for an employer ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... sex.

Section 2000e–3(a) states in relevant part: It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

In 1972, Congress amended Title VII to make its provisions applicable to state and local governments. The Supreme Court described the statutory change in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 449 n. 2, 96 S.Ct. 2666, 2668 n. 2, 49 L.Ed.2d 614 (1976):

 As relevant here, the definition of "person" in § 701(a) of the 1964 Act, 78 Stat. 253, 42 U.S.C. § 2000e (a), was amended by § (2)(1) of the Equal Employment Opportunity Act of 1972 (hereinafter the 1972

amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a, on the grounds that his immediate supervisor in the department, the Deputy Chief of Police, sexually harassed him in the workplace[2] and that, when he complained of the harassment, the Chief of Police not only failed to take corrective action, he fired him.[3] The Board of Trustees, claiming sovereign immunity under the Eleventh Amendment,[4] moved the district court to dismiss Downing's Title VII claim. Citing the Supreme Court's decisions in *City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997) and *Kimel v. Florida Board of Regents*, 528 U.S. 62, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000), the Board contended that Congress, in amending Title VII to bring state (and local) governments within its ambit, exceeded its authority under Section 5 of the Fourteenth Amendment to abrogate state sovereign immunity.[5] Section 5 empowers Congress

---

Amendments), 86 Stat. 103, 42 U.S.C. § 2000e (a) (1970 ed., Supp IV), to include "governments, governmental agencies, [and] political subdivisions."

The express exclusion of "a State or political subdivision thereof" provided in § 701(b) of the former was stricken by § 2(2) of the latter, 86 Stat. 103, 42 U.S.C. § 2000e (b) (1970 ed., Supp IV). Section 2(5) of the 1972 Amendments, 86 Stat. 103, 42 U.S.C. § 2000e (f) (1970 ed., Supp IV), amended § 701(f) of the 1964 Act, 42 U.S.C. § 2000e (f), to include within the definition of "employee" those individuals "subject to civil service laws of a State government, governmental agency or political subdivision."

The 1972 Amendments retained the right of an individual aggrieved by an employer's unlawful employment practice to sue on his or her own behalf, upon satisfaction of the statutory procedural prerequisites, and made clear that the right was being extended to persons aggrieved by public employers. See 1972 Amendments, § 4(a), 86 Stat. 104, 42 U.S.C. §§ 2000e–5 (a)-(g) (1970 ed., Supp IV).

**2.** Downing alleged that the sexual harassment was so severe and pervasive that it created a "hostile environment" in the workplace. *See Meritor Savings Bank v. Vinson*, 477 U.S. 57, 73 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986) ("A claim of 'hostile environment' sex discrimination is actionable under Title VII."); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993) ("When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated.") (internal citations and quotation marks omitted).

**3.** Downing also seeks relief from the Board under Title I, 42 U.S.C. § 12111 *et seq.*, and II, 42 U.S.C. § 12131 *et seq.*, of the Americans with Disabilities Act and the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* In addition, Downing seeks damages against the supervisor, Deputy Chief Daniel M. Strunk, under several theories of Alabama common law. The district court has granted the Board's motion for summary judgment on Downing's Disability Act and Rehabilitation Act claims and has stayed consideration of Downing's state law claims against Strunk. None of these claims is before us in this appeal.

**4.** The Eleventh Amendment to the United States Constitution states that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." The Amendment has been interpreted as a jurisdictional bar on the federal and state courts from hearing suits brought against states by their own citizens, or by citizens of other states. *See Alden v. Maine*, 527 U.S. 706, 754, 119 S.Ct. 2240, 2266, 144 L.Ed.2d 636 (1999); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890). Congress may abrogate state sovereign immunity, but it can only do so if: (a) Congress "unequivocally expressed its intention to abrogate the immunity," through a "clear legislative statement," and (b) Congress has acted "pursuant to a valid exercise of power." *Seminole Tribe v. Florida*, 517 U.S. 44, 55, 116 S.Ct. 1114, 1123, 134 L.Ed.2d 252 (1996).

**5.** The Fourteenth Amendment to the United States Constitution states, in relevant part:

to enforce rights guaranteed by the Amendment; Section 5, however, does not authorize Congress to create new constitutional rights. *City of Boerne*, 521 U.S. at 519, 117 S.Ct. at 2164. In making the states answerable to their employees in money damages for subjecting them to sexual harassment as a condition of their employment, the Board argued, Congress enforced a right not found in the Fourteenth Amendment—specifically, the Equal Protection Clause—and thus exceeded its Section 5 authority.

The district court disagreed and denied the Board's motion to dismiss. The Board now appeals. We have jurisdiction under 28 U.S.C. § 1291. *See Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467–68, 98 S.Ct. 2454, 2457–58, 57 L.Ed.2d 351 (1978).

## II.

■ The Board concedes, as it must, that Congress, in amending Title VII in 1972, intended to make its provisions applicable to state and local governments. *See In re Employment Discrim. Litig. Against the State of Ala.*, 198 F.3d 1305, 1317 (11th Cir.1999) ("Given this clear precedential guidance, [in *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976)], we have no hesitation in concluding that Congress unequivocally expressed its intent to abrogate the states' Eleventh Amendment immunity when it amended Title VII to cover state and local governments."). The question we must answer, then, is whether Congress exceeded its Section 5 authority by creating rights which the Equal Protection Clause does not embrace. The question is two-fold: (1) whether the right to be free from the sort of sexual harassment condemned in *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), and *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993), is only a statutory right, and (2) if the answer to that question is no, whether Congress's creation of the right to be free from retaliation for complaining about such harassment was necessary to protect the right to be free from such sexual harassment. We address these questions in turn.

### A.

We find our answer to the first question in *Cross v. State of Alabama*, 49 F.3d 1490 (11th Cir.1995). In *Cross*, the plaintiffs, employees at an Alabama mental health hospital, sued the State and the officials in charge of the facility (in both their official and individual capacities) under Title VII and 42 U.S.C. § 1983, claiming that their supervisors had subjected them to "sexual harassment and a hostile work environment." *Id.* at 1501. This, they alleged, altered the conditions of their employment in violation of Title VII and deprived them of the equal protection of the laws. The plaintiffs sought injunctive relief, back pay, and damages, both compensatory and punitive. The case was tried to a jury, and the jury, in its answers to the court's special interrogatories,[6] found for the plaintiffs on all claims. Based on the jury's answers, the court awarded the

---

Section 1.... No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property without due process of law; nor deny to any person within its jurisdiction the equal protection of the law.

. . . .

Section 5. The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.

6. *See* Fed.R.Civ.P. 49(b).

plaintiffs back pay, compensatory damages for emotional distress, and punitive damages.[7]

The State and the officials appealed on several grounds, one of relevance here: that the evidence was insufficient to establish the plaintiffs' sexual harassment claims under Title VII and the Equal Protection Clause.[8] After acknowledging that the plaintiffs had a right under Title VII and the Equal Protection Clause to be free from sexual harassment at the hands of their employer, the court held that the evidence was sufficient to establish both claims. What is more, the court held that the elements of the equal protection and Title VII claims were identical.[9] Given

7. The court also enjoined the individual defendants from retaliating against the plaintiffs for participating in the lawsuit and ordered them to reinstate the plaintiffs to their former positions or, at the plaintiffs' option, to an equivalent position with another state agency.

8. Other grounds raised on appeal, none of which is relevant here, were: First, the Eleventh Amendment barred the damages awards against the State and the officials sued in their official capacities under 42 U.S.C. § 1983 because Congress, in enacting § 1983, did not abrogate the States' Eleventh Amendment immunity and Alabama had not waived its immunity. (The court agreed. *Cross,* 49 F.3d at 1502–03. It also vacated the awards of back pay against the officials in their individual capacities, since they were not employers under Title VII. *Id.* at 1509). Second, the state commissioner in charge of the hospital was entitled to qualified immunity as to the claims against him in his individual capacity.

9. The court employed the following language in concluding that the elements were the same:

> [Plaintiffs] ... alleged a violation of their equal protection rights under the United States Constitution pursuant to 42 U.S.C. § 1983, based upon ... [the] sexual harassment [engaged in by the director of the mental health facility]. [Plaintiffs] have a constitutional right to be free from unlawful sex discrimination and sexual harassment in public employment.
>
> In order to establish a violation of the Equal Protection Clause, [plaintiffs] must prove discriminatory motive or purpose. *Whiting v. Jackson State University,* 616 F.2d 116, 122 (5th Cir.1980). The court in *Whiting* held that "such intent should be inferred in the same manner as [the Supreme Court] said it is inferred under [42 U.S.C. § 2000e–5]." *Whiting,* 616 F.2d at

121. "When section 1983 is used as a parallel remedy for violation of section 703 of Title VII [42 U.S.C. § 2000e–2], the elements of the two causes of action are the same." *Hardin v. Stynchcomb,* 691 F.2d 1364, 1369 n. 16 (11th Cir.1982) (citing *Whiting,* 616 F.2d at 123).

*Cross,* 49 F.3d at 1507–08 (internal citation omitted) (some alteration in original).

The Seventh Circuit reached the same conclusion in *Nanda v. Board of Trustees of the University of Illinois,* 303 F.3d 817 (7th Cir. 2002). After quoting the text of 42 U.S.C. § 2000e–2(a), the court said this:

> Like the prohibition of the Equal Protection Clause, this language is aimed at intentional discrimination, and "[t]o prove a violation of this provision, a plaintiff must proffer either direct or indirect evidence of the employer's discriminatory intent." *Bennett v. Roberts,* 295 F.3d 687, 694 (7th Cir.2002).... [B]oth the aim of Title VII, as well as the method for proving violations of Title VII, are the same as those of the Equal Protection Clause.

*Id.* at 829–30.

The Seventh Circuit intimated in *Bohen v. City of East Chicago,* 799 F.2d 1180, 1187 (7th Cir.1986), involving a claim of sexual harassment and retaliation, that a claim under the Equal Protection Clause may be easier to establish than a claim under Title VII. Addressing the question whether the plaintiff, who failed to establish a Title VII case, had nonetheless made out a case under the Clause, the court said this:

> First, the ultimate inquiry is whether the sexual harassment constitutes intentional discrimination. This differs from the inquiry under Title VII as to whether or not the sexual harassment altered the conditions of the victim's employment. That standard comes from the regulations promulgated under Title VII. *See [Meritor Savings Bank v.] Vinson, [supra].* Sec-

this holding—that the elements of a sexual harassment claim are identical—it follows that Title VII did not create a new constitutional right. As the Seventh Circuit aptly observed in *Nanda*, "[a] review of the standards of the Equal Protection Clause and of Title VII reveals that Title VII 'enforces the Fourteenth Amendment without altering its meaning.'" 303 F.3d 817, 830 (7th Cir.2002) (quoting *Cherry v. Univ. of Wis. Sys. Bd. of Regents*, 265 F.3d 541, 549 (7th Cir.2001)).

 We discern no material difference between the sexual harassment in *Cross* and the harassment in the case at hand, except for the fact that in *Cross,* the individual who perpetrated the harassment, the hospital's director, was male and the victims were female, whereas here, both the perpetrator and the victim were male. The State contends such difference is material; that is, the Equal Protection Clause does not protect a state employee from same-sex discrimination. In *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998), a unanimous Supreme Court addressed, and rejected, this same-sex argument—albeit in reviewing a Title VII claim of sexual harassment. What the Court had to say on that occasion is that Title VII protects the same-sex victim as well as the opposite-sex victim. What is important is that the plaintiff demonstrate that he or she suffered discriminatory treatment in the conditions of employment "because of ... sex." *Id.* at 81, 118 S.Ct. at 1002. The Court recognized that

> [c]ourts and juries have found the inference of discrimination easy to draw in

most male-female sexual harassment situations, because the challenged conduct typically involves explicit or implicit proposals of sexual activity; it is reasonable to assume those proposals would not have been made to someone of the same sex. The chain of inference would be available to a plaintiff alleging same-sex harassment, if there were credible evidence that the harasser was homosexual. But harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex. A trier of fact might reasonably find such discrimination, for example, if a female victim is harassed in such sex-specific and derogatory terms by another woman as to make it clear that the harasser is motivated by general hostility to the presence of women in the workplace. A same-sex harassment plaintiff may also, of course, offer direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace. Whatever evidentiary route the plaintiff chooses to follow, he or she must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "*discrimina[tion]* ... because of ... sex."

*Id.* at 80–81, 118 S.Ct. 998.

We distill from the Court's discussion that the employer is accountable for the sexual harassment, regardless of the sexes of the harasser and the employee-victim. To be sure, that the two are of the same sex may, in some cases, make it more difficult for the employee to establish that the employer discriminated against him in the workplace "because of" his sex. That

---

ond, a plaintiff can make an ultimate showing of sex discrimination either by showing that sexual harassment that is attributable to the employer under § 1983 amounted to intentional sex discrimination or by showing that the con-

scious failure of the employer to protect the plaintiff from the abusive conditions created by fellow employees amounted to intentional discrimination. *Accord Meritor Savings Bank v. Vinson*, [*supra* ].

*Id.*

they are of the same sex, however, does not preclude a claim of sexual harassment: "[T]he Constitution prohibits ... *intentional* discrimination...." *In re Employment Discrim. Litig. Against the State of Ala.,* 198 F.3d 1305, 1320 (11th Cir.1999). Since *Cross* holds that the elements of a sexual harassment claim under Title VII and the Equal Protection Clause are the same—meaning that the employee must prove that the state actor intended to discriminate because of the employee's sex—we discern no principled basis for holding that the Equal Protection Clause is implicated in a case of opposite-sex discrimination but not in a case of same-sex discrimination. In sum, the district court did not err in denying the Board Eleventh Amendment immunity with respect to Downing's claim under 42 U.S.C. § 2000e–2(a)(1).

### B.

 Having upheld Downing's sexual harassment claim, we address the Board's argument that Congress went "too far" in making the antiretaliation provision of 42 U.S.C. § 2000e–3(a) applicable to the states. We are not persuaded. Where, as here, Congress has not exceeded its Section 5 authority by creating a new substantive constitutional right, it has the authority " 'to determin[e] whether and what legislation is needed to secure the guarantees of the Fourteenth Amendment,' and its conclusions are entitled to much deference." *City of Boerne v. Flores,* 521 U.S. 507, 536, 117 S.Ct. 2157, 2172, 138 L.Ed.2d 624 (1997) (quoting *Katzenbach v. Morgan,* 384 U.S. 641, 651, 86 S.Ct. 1717, 1723–24, 16 L.Ed.2d 828 (1966)). "Legislation which *deters* or remedies constitutional violations can fall within the sweep of Congress' enforcement power *even if* in the process it prohibits conduct which is not itself unconstitutional and intrudes into 'legislative spheres of autonomy previously reserved to the States.' " *Id.* at 518, 117 S.Ct. at 2163.

It is clear to us that Congress enacted the antiretaliation provision of Title VII to deter the sort of employment discrimination the statute (and Equal Protection Clause) prohibits. As a unanimous Supreme Court observed in *Robinson v. Shell Oil Co.,* the purpose of an antiretaliation provision is to "[m]aintain [ ] unfettered access to statutory remedial mechanisms." 519 U.S. 337, 346, 117 S.Ct. 843, 848, 136 L.Ed.2d 808 (1997). Title VII's antiretaliation provision encourages victims of discrimination to take on the risks and burdens of complaining to their employers about discrimination in the workplace. We agree with the Eighth Circuit that section 2000e–3(a) passes constitutional muster. *See Warren v. Prejean,* 301 F.3d 893, 899–900 (8th Cir.2002).

### III.

For the foregoing reasons, the district court's order denying the Board Eleventh Amendment immunity is

AFFIRMED.